IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

CIVIL ACTION NO. 3:23-cv-667

JANE DOE

    *Plaintiff*,

v.

FARD SULTAN

    *Defendant*.

## DECLARATION OF JANE DOE

1. For purposes of this matter, my name is Jane Doe, as I am seeking to proceed anonymously pursuant to the provisions of the Civil Action Relating to Disclosure of Intimate Images Act (15 U.S.C. § 6851). I am over the age of twenty-one, competent to testify, and have personal knowledge of the facts set forth in this declaration.

2. July 8, 2023, started probably the hardest time in my life.

3. On July 8, I learned from a friend that someone using the name "Te'Andre Brown" posted an intimate video of me to the public Facebook page of the sorority of which I am a member.

4. I did not see the post and I do not know how long the video was available. But I do know that several people saw it and recognized me in it because multiple people contacted both me and my mother (who also is a sorority member) before my sorority thankfully took the video down, which had been included in a reply to one of the sorority's posts.

5. According to my sorority sisters' descriptions of the video, the video showed me engaged in intimate acts with Fard Sultan, my ex-boyfriend. From their descriptions of what they said they saw, I knew what video they were talking about.

1

6. I began dating Fard in January 2023. Sometime thereafter, without my knowledge or consent, Fard had created a video of us while we were intimate in the way described by those who saw the video. The video showed us both nude in Fard's bed. As I performed oral sex on him, I noticed he had a light shining in my face. In the original video, I asked if he was recording, and he lied and said he wasn't. I asked him again more sternly and he then admitted that he was recording us together.

7. I also asked him on video why he lied, to which he replied that he lied because he didn't want me to stop.

8. I then told him he had to destroy the footage because I wasn't comfortable with that. I have never knowingly participated in an intimate or sexual video and did not want such a video in existence. He said he would destroy it. Then he said he did when I asked him later if he had.

9. So when my friends in my sorority described generally what they saw in the video, I was crushed and felt betrayed and humiliated.

10. I was preparing to end my relationship with Fard and he seemed to know it was coming based on our interactions about that time.

11. In fact, a couple of weeks before we broke up, I was distancing myself from Fard and hadn't responded to his texts. When I didn't respond as quickly as he wanted, he threatened me. He said, "I'm not someone to be disrespected," and warned me that I shouldn't think I could get away with disrespecting him.

12. I cannot think of anyone except Fard who could have or would have posted that kind of material to my sorority's Facebook page.

13. As far as I know, Fard is the only person who would have this video. After he finally admitted to recording it, he also sent me a copy of the video, but I did not save it to my phone or any other device and I definitely would not have posted it anywhere online.

14. Besides knowing that I was ending our relationship, Fard also knew how important my sorority and the work we accomplish there is in my life. So he also knew how damaging it would be for me if a video like that was posted where it was.

15. I barely had time to absorb the shock of this event when I found out that my employer (a daycare center) also received intimate images of me via email and almost certainly from Fard who knows where I work.

16. I don't know exactly what my employer actually received because the people that received it have not shared the materials with me. I was told there was an email that supposedly came from a parent of one of my students. But the name used by the person who sent the video and images to my employer was the same name used by the person who posted the video to my sorority's Facebook page ("Te'Andre Brown"). The email said that I was having an affair with someone's husband and the sender did not feel safe with me around his child and wanted me terminated immediately. I was told by my employer that the email included a photo of me and a very graphic video, and the implication was that they were sexual in nature (at least from my point of view).

17. I did send Fard "nudes" during our relationship, which included photos of me topless or fully nude. My face is visible in most of them and partially visible in others. But I never authorized Fard to share them with anyone else. I also haven't shared those photos with anyone else and, as far as I know, my phone and accounts where these images are stored have never been hacked. So I can't think of anyone else who would have any of these images other than Fard, unless

3

Fard sent someone copies without my knowledge or consent. Those photos were intended for Fard only and nothing I ever said to him during our relationship would have led him to believe otherwise.

18. After these two incidents, I confronted Fard with all of this, but he denied having any knowledge of or role in what happened. But that just can't be true since I did not share the photos or post them and he is the only other person who had access to the video he created while also knowing the specific details of my life, such as my involvement with the sorority and the identity of my employer.

19. In fact, when I confronted him again about the video he said he destroyed and told him he had to be the source of that video because he created it with his phone, "I'm not denying that" was his response.

20. He also told me to "lose his number" and that he would be in contact with my mother to help find out who did this. But he never contacted my mother or offered any explanation for who else might have done this to me.

21. Even if it was someone else who made the post on my sorority's Facebook page or sent the materials to my employer—something I hope to find out through this lawsuit—that someone could only have done it with Fard's help since only he had the materials and he is one of few people who knew those details about me, like my employer and my sorority.

22. I tried to find legal counsel almost as soon as this happened, but I couldn't afford the retainers they said would be required.

23. Eventually I found lawyers who would agree to help me pro bono through the Cyber Civil Rights Initiative (first a lawyer in Texas and then, through him, lawyers in North Carolina) but that process took a couple of months.

24. With all of these things happening, and with Fard denying he did anything, I live every day in fear that I will be humiliated publicly again with these materials that I shared with Fard in confidence and trust; that I will learn about something else posted to social media or somewhere else on the internet; that my employer or the parents of the children I care for will tell me about something else they received or saw online; and that I will lose my job at the day care center and my ability to interact with those children who mean so much to me.

25. The content and context of this declaration is sufficient to provide Fard Sultan notice of my identity, based on our interactions before and after the intimate images were disclosed/distributed.

I declare under penalty of perjury under the laws of the United States that the foregoing facts stated in this declaration are within my personal knowledge and are true and correct.

Dated: October 16, 2023.

_Jane Doe_
Jane Doe

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document will be served along with the Summons and the Complaint, in accordance with Rule 4 of the Federal Rules of Civil Procedure, upon the following:

> Fard Sultan
> 801 S. Main Street, Apt. #220
> Mount Holly, NC 28210

This the 18th day of October, 2023.

/s/ **L. Cooper Harrell**
L. Cooper Harrell