IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

CIVIL ACTION NO. 3:23-CV-667

JANE DOE

    *Plaintiff*,

v.

FARD SULTAN

    *Defendant*.

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND TO PROCEED UNDER A PSEUDONYM**

As Plaintiff prepared to end her relationship with Fard Sultan, he made threats and then took intimate images of Plaintiff—some of which he obtained by clandestine means during their relationship—and disclosed these images to others without Plaintiff's authorization or consent, including on Facebook and to Plaintiff's employer. Plaintiff therefore seeks a temporary restraining order and a preliminary injunction to preclude further dissemination of these intimate images pending trial on her claims for damages and permanent injunctive relief. Plaintiff also seeks the Court's permission to proceed anonymously, using the pseudonym "Jane Doe" as allowed under the Civil Action Relating to Disclosure of Intimate Images Act ("CARDII"), codified at 15 U.S.C. § 6851.

**STATEMENT OF FACTS**

Plaintiff was in a committed relationship with defendant Fard Sultan during the first half of 2023. (Pl.'s Decl. ¶ 6, filed contemporaneously herewith.) While in that relationship, Plaintiff created and sent Sultan "intimate images" (or "nudes") of herself in which Plaintiff was clearly

identified but that she never intended for Sultan to distribute to anyone else.[1] (*Id.* ¶ 17.) Sultan also created videos of Plaintiff and Sultan engaging in intimate acts without Plaintiff's knowledge or consent. (*Id*. ¶¶ 3–10.) In fact, Plaintiff even confronted Sultan later about whether he had filmed them together and, although he denied it initially, he finally admitted that he had created a video but promised to destroy it. (*Id.* ¶¶ 6–8.) He lied.

As Plaintiff considered ending her relationship with Sultan and began distancing herself from him, Sultan threatened her. "I'm not someone to be disrespected," he warned Plaintiff and promised to make sure that Plaintiff would not get away with disrespecting him. (*Id*. ¶ 11.)

Soon after, on July 8, 2023, Sultan made good on his threats. As Plaintiff prepared to break the news to Sultan about her decision to end their relationship, friends started reaching out to Plaintiff and her mother about a video they had seen posted to Facebook that showed Plaintiff engaging in sexual acts with Sultan—the clandestine video Sultan created. (*Id*. ¶¶ 2–6.) Plaintiff recognized the video based on the descriptions of those who had seen it and because she had never participated in such a video in the past. (*Id.* ¶ 8.) The video was posted under the name "Te'Andre Brown, but only could have been posted by, or come from, Sultan since Plaintiff neither posted the video nor had a copy of the video to share with anyone else, and none of her accounts or devices had been "hacked" such that someone else could have obtained it from her.[2] (*Id*. ¶¶ 13, 17.)

The page on which Sultan's video had been posted was personal to Plaintiff: the public-facing Facebook page of Plaintiff's sorority—a non-profit organization that Sultan knew, based

---

[1] Throughout this brief, the phrase "intimate images" refers to visual materials (e.g., photos, videos) that depict (a) the uncovered genitals, pubic area, anus, or female nipple; or (b) individuals engaging in sexual intercourse (including genital-genital, oral-genital, anal-genital, or oral-anal), masturbation, or graphic or simulated lascivious exhibition of the anus, genitals, or pubic area. *See* 18 U.S.C. § 2256.

[2] After Plaintiff confronted Sultan about the video, he sent a copy to her phone; she did not save it on her phone or any other device. (Pl.'s Decl. ¶ 13.)

on his relationship with Plaintiff, was personally important to Plaintiff and would make the unauthorized disclosure of the video most harmful. (*Id.* ¶¶ 13–14.)

Sadly, however, this wasn't the end of Plaintiff's humiliation. Plaintiff soon discovered, about the same time her sex life was posted to her sorority's Facebook page, that her employer also received a "very graphic video" and a sexually charged photo of Plaintiff via email from someone using the same name that appeared with the video posted to Facebook – "Te'Andre Brown." (*Id*. ¶¶ 15–17.)

Saddened by what was happening, Plaintiff called and confronted Sultan. Although Sultan admitted again that he had used his phone to create the video posted to Facebook and emailed to Plaintiff's employer, (*id.* ¶¶ 19-20), he denied having any role in or knowledge of the Facebook post or the email to Plaintiff's employer, (*id.* ¶ 18). No one else possessed the video or Plaintiff's intimate images while also knowing Plaintiff's sorority *and* her employer. (*Id*. ¶ 21.)

Fearing Sultan could retaliate again with use of these videos and photos, or hide evidence that Plaintiff would need destroyed, Plaintiff searched for counsel to help her obtain relief. Ultimately, she succeeded in that search and then filed an action as quickly as circumstances would allow. (*Id*. ¶¶ 22–23.) Plaintiff lives in daily and legitimate fear that Sultan will revisit his threat. (*Id*. ¶ 24.)

## NEED FOR *EX PARTE* RELIEF

Plaintiff needs *ex parte* relief because, based on the specific facts shown in Plaintiff's declaration, providing Sultan notice may increase the risk that he will either violate Plaintiff's rights again in retaliation for Plaintiff's asserting her rights or that he will hide or destroy evidence on which Plaintiff's claims rest and that only he controls (such as proof that he contacted Plaintiff's employer). When these known instances of Sultan's disclosure occurred, Plaintiff confronted

Sultan, who denied any involvement. But that denial is wholly implausible: only Sultan possessed the video posted to Facebook; and only Sultan received images from Plaintiff that Sultan then shared with her employer. Destruction of evidence in cases like this one—when defendants uniquely possess incriminating electronic or copyrighted evidence that they know the plaintiffs need to prevail on their claims—is exceedingly and unfortunately common. *E.g.*, *QueTel Corp. v. Abbas*, 819 F. App'x 154, 155–56 (4th Cir. 2020) (affirming spoliation sanctions against parties who destroyed electronic information relevant to the plaintiff's copyright and trade secret claims after receiving notice of the litigation); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 532–33 (D. Md. 2010) (recommending spoliation sanctions, including entry of a default judgment against the defendants, after they destroyed evidence relevant to their copyright violations); *see also Matter of Vuitton et Fils S.A.*, 606 F.2d 1, 4–5 (2d Cir. 1979) (remanding with instructions to the district court to enter an ex parte TRO when the plaintiff showed that notice would likely render its prosecution of the action fruitless). And that risk is especially apparent here since Sultan already has implausibly denied responsibility for posting or disseminating images that only he could post or disseminate (because only he had them). *E.g.*, *AT&T Broadband v. Tech Commcns., Inc.*, 381 F.3d 1309, 1319–20 & n.13 (11th Cir. 2004) (affirming *ex parte* nature of TRO when evidence showed that the defendants had concealed or would likely conceal evidence of their misconduct and collecting cases reaching similar conclusions).

Moreover, *ex parte* TROs are especially necessary—and appropriate—when, as here, "it is the sole method of preserving a state of affairs in which the court can provide effective final relief." *Vuitton*, 606 F.2d at 4 (internal quotation marks omitted). Sultan already disclosed these intimate images to retaliate against Plaintiff as she prepared to end her relationship with him. Plaintiff therefore maintains a very real fear that Sultan's receiving service of this lawsuit and notice of her

efforts to obtain injunctive relief will only result in further retaliation from Sultan in humiliating and degrading ways that no later relief or injunction can undo. *Ex parte* relief is therefore necessary and appropriate under Rule 65.

## ARGUMENT

Plaintiff is entitled to a TRO and a preliminary injunction under CARDII. "A plaintiff seeking a preliminary injunction must establish that [she] is likely to succeed on the merits, that [she] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest." *Air Evac EMS, Inc. v. McVey*, 37 F.4th 89, 102–03 (4th Cir. 2022). As demonstrated below, Plaintiff can satisfy each prong of the analysis, and therefore is entitled to a TRO and a preliminary injunction until her claims can be decided on their merits at trial.

First, Plaintiff is likely to succeed on the merits of her claim under CARDII. Sultan's unauthorized disclosure of the video and photo identified above, and as described in Plaintiff's declaration, violates all of CARDII's elements. Proof of the following elements establishes a CARDII violation: (1) the defendant discloses an intimate visual depiction of an individual; (2) the disclosure is made in or affecting interstate commerce or through use of "any means or facility of interstate or foreign commerce"; (3) the disclosure occurred without the depicted individual's consent; and (4) the defendant disclosed the intimate visual depiction knowing the depicted individual had not consented or in reckless disregard for whether the individual consented. 15 U.S.C. § 6851(b)(1)(A). Under CARDII, "disclosure" is a broad term that is not limited to "publication," as in cases of defamation. *See id*. § 6851(a)(4). To the contrary, the mere transfer of an "intimate visual depiction" qualifies as "disclosure," as does merely making such depictions "accessible," *id.*, which is itself a very broad term. *E.g.*, New Oxford American Dictionary 9 (3d

5
Case 3:23-cv-00667-FDW-DCK   Document 6   Filed 10/18/23   Page 5 of 10

ed. 2010) (defining "accessible" as "able to be easily reached . . . or obtained or used"). An "intimate visual depiction" is any photo, video, or other visual image, that depicts, in relevant part, (1) the uncovered genitals, pubic area, or post-pubescent female nipple of an identifiable individual; or (2) an identifiable individual engaging in "sexually explicit conduct."[3] 18 U.S.C. § 2256. "Sexually explicit conduct" includes a range of sexual activities between individuals, including "graphic sexual intercourse, such as genital-genital, [and] oral-genital," graphic or lascivious simulated masturbation, or "graphic or simulated lascivious exhibition of the genitals or pubic area of any person." *Id.* (incorporated by reference in 15 U.S.C. § 6851(a)(6)). Plaintiff's declaration proves that she is likely to make all these showings against Sultan.

That Sultan disclosed the intimate visual depictions identified in Plaintiff's declaration cannot be seriously disputed. Those depictions qualify as "intimate visual depictions." Only Sultan had possession of both the photos of Plaintiff and the video he secretly created (and then lied about destroying) while also knowing about Plaintiff's sorority and employer. Plaintiff never shared those photos or the video with anyone else and certainly did not share them on Facebook or with her employer. And by posting them to Facebook and emailing them to Plaintiff's employer, Sultan disclosed them under CARDII.

Indeed, that is true even if it is somehow later proven that someone other than Sultan disclosed the video and photo on Facebook and to Plaintiff's employer. That other person could have done so only if Sultan transferred or distributed those visual materials, or made them accessible to, that other person (i.e., "disclosed" them), which also would violate CARDII.

---

[3] Although CARDII lists that last category of "intimate visual depictions" (regarding sexually explicit conduct) as part of the elements of § 6851(a)(5)(A)(ii), this is clearly a scribners error: "(III)" should have been listed as "(iii)." Any other construction would render that portion of the statute surplusage, which no valid construction may do. *E.g.*, *Nero v. Mosby*, 890 F.3d 106, 124 (4th Cir. 2018).

That these disclosures were made in or affecting interstate commerce or through use of "any means or facility of interstate or foreign commerce" (CARDII's second element) also is indisputable. No copious amount of precedent is needed to establish that the internet is a means or facility or interstate commerce, and all of these intimate visual depictions were disclosed by that means. *Village Tavern, Inc. v. Catbird Hospitality, LLC*, 1:21-cv-0228, 2022 WL 3440637, at *3 (Aug. 16, 2022 W.D.N.C.) (noting that use of the internet satisfies the "in commerce" requirement under various federal statutes because the internet is a "channel of interstate commerce").

The last two CARDII elements also are easily satisfied here. Plaintiff *never* consented to have the intimate images she sent to Sultan disclosed to anyone who was not Sultan, and she never consented to the video's creation, much less its public disclosure. (Pl.'s Decl. ¶¶ 3–21.) And Sultan disclosed those intimate visual depictions knowing that Plaintiff never consented to their disclosure or in reckless disregard for whether she consented. That is evident in Sultan's reaction to news of the disclosure, when he falsely denied any role in the events and then falsely promised to help find out who did it. (*Id.* ¶¶ 18–20.)

Second, Plaintiff will suffer irreparable harm without a TRO and an injunction. The abject humiliation and degradation of having her most intimate moments disclosed not only to strangers but to friends and family is the definition of irreparable harm. This is why CARDII expressly provides for TROs and preliminary (and permanent) injunctions as a form of relief for proven violations. 15 U.S.C. § 6851(b)(3)(A)(ii).

Third, the equities fall on Plaintiff's and <u>not</u> Sultan's side. Forbidding Sultan from further disclosing these intensely private images preserves the status quo and maintains Plaintiff's interest in keeping private what was always intended to be private. (*See* Pl.'s Decl. ¶¶ 5–24.) Sultan, on

7

Case 3:23-cv-00667-FDW-DCK   Document 6   Filed 10/18/23   Page 7 of 10

the other hand, has no legitimate need to disclose any of these images to anyone and therefore will not be legitimately burdened by the proposed TRO or injunction.

And fourth, the injunction is in the public's interest because, put simply, the public has no interest in the disclosure of Plaintiff's intimate images. The public does have an interest in seeing the law enforced and in Plaintiff's rights being vindicated. Plaintiff therefore requests that the Court grant this motion, enter a TRO, and then issue a preliminary injunction pending trial.

\* \* \* \* \*

As noted above, CARDII permits plaintiffs to pursue their claims anonymously. 15 U.S.C. § 6851(b)(3)(B). Plaintiff would like to proceed in that fashion here, using the pseudonym "Jane Doe." (Pl.'s Decl. ¶ 1.) Doing do would allow her to pursue her rights under CARDII while avoiding the further embarrassment, insult, and injury that would come from having her name connected in a public forum to the disclosures of intimate images described above. Plaintiff's declaration, filed herewith, contains more than enough information for Sultan to know Plaintiff's identity, confirming that he will suffer no harm if Plaintiff is permitted to move forward under the "Jane Doe" pseudonym. Accordingly, Plaintiff respectfully asks that the Court enter an order permitting her to proceed in this matter as Jane Doe. If the Court would prefer, Plaintiff is happy to file a sealed version of the Complaint that includes her full name.

## CONCLUSION

Sultan violated Plaintiff's rights when he disclosed Plaintiff's intimate images to others without Plaintiff's consent and despite knowing Plaintiff never intended those images to be disclosed to anyone else (or in some cases even created). That Sultan was the culprit here—or one of them at least—is clear from the evidence: Sultan had a motive to share them all (e.g., to make good on his threat to Plaintiff to not let her get away with "disrespecting him"); Sultan had access

to all materials at issue; and Sultan knew facts about Plaintiff (her sorority and her employer) that would make the misuse of those materials most damaging. The Court should therefore enter an order permitting Plaintiff to pursue this action pseudonymously and enjoining Sultan—and anyone who is in active concert or has participated in any violation of CARDII—from disclosing any intimate images depicting Plaintiff, destroying any evidence proving any prior disclosure, and continuing to display or disclose any intimate images of Plaintiff, or any similar conduct.

This the 18th day of October, 2023.

/s/ L. Cooper Harrell
L. Cooper Harrell
N.C. State Bar No. 27875
TURNING POINT LITIGATION
MULLINS DUNCAN HARRELL &
RUSSELL PLLC
300 North Greene Street, Suite 2000
Greensboro, NC 27401
Telephone: 336-645-3320
Facsimile: 336-645-3330
charrell@turningpointlit.com

OF COUNSEL:

Joshua J. Bennett
CARTER ARNETT PLLC
8150 N. Central Expy, Ste. 500
Dallas, TX 75206
Telephone: 214-550-2112

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document will be served along with the Summons and the Complaint, in accordance with Rule 4 of the Federal Rules of Civil Procedure, upon the following:

>Fard Sultan
>801 S. Main Street, Apt. #220
>Mount Holly, NC 28210

This the 18th day of October, 2023.

>**/s/ L. Cooper Harrell**
>L. Cooper Harrell